THOMAS EVANS, *Sheriff, et al.*, v. GEORGE B. CARSON.

**No. 600.**\*   (59 Pac. 1091.)

HOMESTEAD—*Occupancy*—*Reasonable Time.* "A purchase of a homestead with a view to occupancy, followed by occupancy within a reasonable time, receives from the time of purchase a homestead exemption from seizure upon execution or attachment." (*Monroe v. May*, 9 Kan. 466.)

Error from Chase district court; W. A. RANDOLPH, judge. Opinion filed February 19, 1900. Affirmed.

\* Petition for order to certify denied by supreme court April 6, 1900.—REP.

*E. W. Cunningham,* for plaintiff in error.

*Chas. B. Graves,* for defendant in error.

The opinion of the court was delivered by

MILTON, J. : In this action the court granted a permanent injunction restraining Thomas Evans, as sheriff of Lyon county, from selling under execution a thirty-acre farm claimed by George B. Carson, the plaintiff below, as his homestead. In the petition in error several creditors are joined with the sheriff as plaintiffs in error. The question presented for decision by this court is the only issue decided by the trial court, that is, Do the facts in the record sufficiently sustain the plaintiff's claim that the land in controversy was a homestead? Briefly stated, the facts are as follows : In January, 1894, the plaintiff below, who for the nine preceding years had been engaged in the mercantile business in Cottonwood Falls, Chase county, sold his homestead in that place for $600, and with that sum and $425 withdrawn from his business bought an improved tract of farming land near Emporia, Lyon county, for the sum of $1725, $700 of the purchase-money being represented by a mortgage he then gave on the land. His health had been poor for some time prior to this, and his purpose in buying the land was to move upon it and make it his home, as soon as he could adjust his business, which it then seemed he would be able to do within a very short time by some sort of deal with his business partner.

A month later Carson moved three or four wagon-loads of his household furniture from Cottonwood Falls to the farm so purchased, but while he was so engaged a disagreement arose between himself and his partner,

as a result of which Carson soon afterward purchased his partner's interest in the store and gave up for the time being his plan of removing to the farm. About the same time he rented a house in Cottonwood Falls, and continued to reside there until August, 1895. In the meantime the goods which had been taken to the farm remained stored in the dwelling-house thereon, and were not removed to Cottonwood Falls until in June, 1894, and not until the tenant—who had just then entered into possession of the premises—insisted upon their removal because the house was not large enough for the storage of the goods and the tenant's convenient use of the dwelling. The terms of this tenancy were such that the tenant was to quit possession at any time Carson should demand possession of the premises upon payment by the latter of a reasonable compensation for the work already done by the tenant; and Carson testified that from the date of the purchase of the land until his removal thereto with his family, in August, 1895, he never for a moment abandoned his intention of occupying the premises as a homestead, and that for nearly all of that time he was making special efforts to dispose of his business in Cottonwood Falls, with the intention of removing to the farm as soon as possible thereafter. In June, 1895, he discovered himself to be insolvent, and on the 6th of that month turned over his stock of goods to three of his principal creditors. At their request he continued in the management of the business, in order that the goods might be quickly disposed of, which was finally accomplished about August 15. Immediately thereafter Carson and his family removed to the farm, but the levy under the executions in favor of several unsecured creditors had been made in the preceding June. The debts represented by the executions levied

Evans v. Carson.

in this case were contracted after the purchase of the farm, and were for merchandise bought by Carson. He voted in Cottonwood Falls at the election in November, 1894.

With the exception of the last-named fact, which taken alone tends to indicate that Carson regarded himself as still a resident of Chase county, whereas the land claimed by him as a homestead was in Lyon county, there is little, if anything, in the record to indicate an abandonment of the intention formed when the land was purchased of immediate occupancy of the same as a homestead.   The intention was manifested by the most unequivocal acts on his part directly after the purchase was made, which acts bordered closely upon actual occupancy of the premises.   Finding himself temporarily unable to occupy the land as a homestead, but expecting to do so at an early date, he made all his arrangements upon the basis of such expectation.   He waited until June before leasing the land, and then made a conditional lease, so that he could at any time thereafter obtain possession upon demand.   In view of the facts and circumstances here appearing, the plaintiff's delay in removing to the land cannot be declared an unreasonable delay.   The legal proposition governing this case is the familiar one thus stated by the supreme court:

"A purchase of a homestead with a view to occupancy, followed by occupancy within a reasonable time, receives from the time of purchase a homestead exemption from seizure upon execution or attachment." (*Monroe v. May*, 9 Kan. 466.)

The judgment of the district court is affirmed.